UNITED STATES of America, Plaintiff,

v.

**Eldridge John BROUSSARD, Jr., et al., Defendants.**

**Crim. No. 91–39–MA.**

United States District Court, D. Oregon.

May 31, 1991.

Stephen Peifer, Asst. U.S. Atty., Portland, Or., Norajean Flanagan, Deputy Chief, Crim. Section, Karla Dobinski, Atty., Crim. Section, Civil Rights Div., U.S. Dept. of Justice, for plaintiff.

Steven Wax, Portland, Or., for defendant Eldridge John Broussard, Jr.

Marc Blackman, Portland, Or., for defendant Walter Terry Barnett, Jr.

Robert Reid, Portland, Or., for defendant Sherin Melinda Jackson.

Emily Simon, Portland, Or., for defendant Carolyn VanBrunt.

Ron Hoevet, Portland, Or., for defendant Alvin Broussard.

Diane Stuart, Portland, Or., for defendant Constance Z. Jackson.

Mark Weintraub, Portland, Or., for defendant Josie R. Foust.

Frank Stoller, Dundee, Or., for defendant Willie Chambers.

**1546**

## AMENDED OPINION

MARSH, District Judge.

On May 15, 1991, in a continuation of a hearing held on April 24, 1991, further argument was received regarding the constitutionality of the non-disclosure provisions of the Federal Victims' Protection and Rights Act, 18 U.S.C. § 3509. At the initial hearing and in the opinion which followed, I reserved ruling on defendants' challenges to the Act based upon their First (or Sixth) Amendment "right to a public trial" in order to consider those challenges along with issues raised in The Oregonian's motion to intervene. For the reasons that follow, defendant's challenges to the Act based upon the First and Sixth Amendments to the constitution and The Oregonian's challenge based upon the Press' rights under the First Amendment are DENIED.

## DISCUSSION

Subsection (d)(2) of the Title 18, Section 3509 provides that *all* documents filed with the court which disclose the "name of or any other information concerning a child" shall be filed under seal without court order. Defendants contend that this provision violates their right to a public trial.[1] The Oregonian alleges that the Act's Privacy protection provision constitutes an infringement of the press' right to access to public criminal proceedings under the First Amendment.

The parties' challenge to subsection (d)(2) is based upon their contention that the statute constitutes a mandatory closure invalidated by the Supreme Court in *Globe Newspaper Co. v. Superior Court, etc.*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). Defendants' argument, based upon their right to a "public trial," is somewhat unique in that the majority of the reported cases which address closures of criminal proceedings involve a first amendment right asserted by the press against a defendant who sought to keep the proceedings closed in order to minimize adverse publicity. *See e.g. Oregonian Publishing v. U.S. Dist. Court for the Dist. of Oregon*, 920 F.2d 1462, 1465 (9th Cir.1990) petition for cert. filed (U.S. May 2, 1991) (No. 90–7915) (extending presumed right of public access to plea agreements unless defendant can demonstrate closure is essential to preserve 'higher values'); *Seattle Times v. U.S. Dist. Court for the Western Dist. of Washington*, 845 F.2d 1513 (9th Cir.1988) (describing presumption of public access to criminal proceedings, but noting that such access must be balanced against defendant's 6th amendment right to a fair trial); and *CBS, Inc. v. U.S. Dist. Court for the Cent. Dist. of California*, 765 F.2d 823 (9th Cir.1985). Thus, the government contends that defendants lack standing to challenge the statute on first amendment public access aground. However, defendants do correctly point out that the Supreme Court has identified that defendants have a *Sixth* Amendment right to a public trial. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980); and *United States v. Sherlock*, 865 F.2d 1069, 1075 (9th Cir. 1989).[2]

It is undisputed that the protection of minor witnesses and victims is a compelling governmental interest. *Maryland v. Craig*, —— U.S. ——, 110 S.Ct. 3157, 3167, 111 L.Ed.2d 666 (1990) (recognizing significant interest of state re protection of child victims throughout court proceedings); *Globe*, 457 U.S. at 608–609, 102 S.Ct. at 2621 (protection of a witness's well-being is compelling); *Gilpin v. McCormick*, 921 F.2d 928 (9th Cir.1990) (protection of minor victims of sex crimes from further trauma

---

1. I have previously considered the issue of unconstitutional vagueness and determined, in light of the overall legitimate policies and goals of the legislation and the legislative history, that only that information concerning the child which would lead to the identification of a particular child should be kept confidential. Opinion of April 26, 1991, 767 F.Supp. 1536, 1542–43.

2. A defendant's Sixth Amendment "right to a public trial" is based upon the assumption that openness encourages honest testimony and ensures that trial participants perform their duties conscientiously. *Sherlock*, 865 F.2d at 1075, citing *Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984).

through compelled psychiatric examination). Defendants and The Oregonian contend, however, that a mandatory closure rule, which circumvents the requirement of specific factual findings of necessity, violates their right to a public trial.

In *Globe Newspaper*, the trial judge closed a portion of a criminal trial involving allegations of sexual molestation of a child pursuant to a Massachusetts statutes which required exclusion of the press during the testimony of a child victim. The Supreme court held that the mandatory closure provisions violated the First Amendment based upon the presumption of public access to criminal trials.[3] Although noting that the state's interest in protecting child witnesses was a "compelling" one, the Court held that such an interest did not justify mandatory closure in light of the trial judge's ability to determine whether closure is necessary on a case-by-case basis.[4]

Since the *Globe* decision, the rule of individual factual determinations has been extended to apply to plea agreements *Oregonian Publishing*, 920 F.2d 1462; detention hearings, *Seattle Times*, 845 F.2d 1513; documents filed in a post-conviction criminal proceeding, *CBS*, 765 F.2d 823; pretrial pleadings, *AP v. U.S. Dist. Court*, 705 F.2d 1143 (9th Cir.1983); and suppression hearings, *United States v. Brooklier*, 685 F.2d 1162 (9th Cir.1982). Prior to the *Globe* decision, the Supreme Court held that the First Amendment guarantee of open criminal proceedings included voir dire, *Press Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*Press Enterprise* I) and a preliminary hearing on a criminal complaint, *Press Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press Enterprise* II).

Based upon the extensions of the presumption of open criminal proceedings, it is likely that the *Globe* rationale would extend to pretrial filings such as the indictment. The charging instrument is a matter of public concern and operates to educate the public regarding the nature of the charges brought against these defendants. Particularly in a trial of this kind, involving a well-publicized religious organization and allegations of long-term extensive child abuse, the public's interest in seeing that justice is carried out fairly is particularly acute. *See Press Enterprise* I, 464 U.S. at 510, 104 S.Ct. at 824 (public interest is heightened in cases involving violent crimes).

However, the argument of defendants and The Oregonian misses one critical distinction between this case and all of the cases challenging court "closures." Subsection (d)(2) does not mandate closure of any pretrial proceeding, portion of the trial, or wholesale sealing of documents. Instead, Congress has mandated a narrow *redaction* of documents, with the redacted version available for public inspection.[5]

Further, in each case in which a court has reversed a closure order, the district court has been faulted, at least in part, for the failure to consider less burdensome alternatives to closure, such as redaction. *See eg., Press Enterprise* I, 464 U.S. at 512, 104 S.Ct. at 825 (suggesting redaction of name of juror from transcript); *Oregonian Publishing*, 920 F.2d at 1467, n. 1; *CBS*, 765 F.2d at 826 (suggesting redaction of names of witnesses); *see also Sherlock*, 865 F.2d at 1076 (lower standard of necessi-

---

**3.** The Court explained that the First Amendment guarantee of public access was rooted in a recognition of the public's role as a check on the judicial process, public education and to stimulate an informed discussion of governmental affairs. *Id.*, at 604, 102 S.Ct. at 2618. In addition, as The Oregonian noted during oral argument, the press is sometimes able to assist in the fact-finding process through its own independent investigation.

**4.** This case-by-case analysis requires a 3-pronged inquiry: (1) whether closure serves a

compelling interest; (2) whether there is a substantial probability that, in the absence of closure, this interest would be harmed, and (3) no alternatives exist that would adequately protect that interest. *Oregonian Publishing*, 920 F.2d at 1465.

**5.** This practice can best be analogized to the confidentiality procedures employed in criminal juvenile proceedings. *See* 18 U.S.C. § 5038(c) and (e) (neither the name nor picture of any juvenile shall be made public in connection with a juvenile delinquency proceeding).

ty applied to partial closure procedure). A review of these cases leads to the conclusion that redaction of limited, identifying information does not constitute closure such that a defendant's (or the press') First Amendment rights to access are infringed. All other information concerning the specific allegations, the identity of the defendants and the nature of the crime are made fully available to the public under subsection (d)(2)(B). *See e.g., Press Enterprise* I, 464 U.S. at 512, 104 S.Ct. at 825 (*in camera* voir dire of potential jurors in rape and murder trial may be necessary to safeguard valid privacy interests and a valid privacy right may give rise to need to seal part of transcript or withhold name of a juror to avoid embarrassment). Thus, in *Press Enterprises*, the Supreme Court recognized that the *nature* of some questions may be so personal as to necessitate closed court proceedings.

Although recognizing the interests of defendants and of the Press to a public trial, I find that the challenged provision does not constitute a "closure" of a criminal proceeding. The statute is narrowly tailored to serve a compelling interest of protecting the identity of children to avoid unwanted pre-trial exposure. Further, as I have construed the Act, Congress has not legislated a closure to which individual findings, such as those required in *Globe* and *Maryland v. Craig*, are necessary. The "closure" provision of the Act is a limited redaction that serves as a Congressionally mandated alternative to closure.

## CONCLUSION

Based upon the foregoing, the confidentiality provisions of the Victim's Protections and Rights Act do not infringe upon Defendants' First or Sixth Amendment right to a public trial, nor do they infringe upon the press' right of access to public documents. Accordingly, the remainder of defendants' motions against the Act and The Oregonian's motion challenging the Act are DENIED.